# The Josh Greenberg Law Firm

(202) 422-0809 – josh@joshgreenberglawfirm.com
1717 K Street, NW, Suite 900, Washington, DC  20006

**VIA ECF**

The Honorable Joseph F. Anderson, Jr.
Senior U.S. District Judge
U.S. District Court
901 Richland Street
Columbia, SC 29201

Re: *Annappareddy v. Lating et al.*, Case No. 1:18-cv-03012-JFA (D. Md.)

Dear Judge Anderson:

On December 20, 2019—more than 20 months ago—Plaintiff Reddy Vijay Annappareddy served a subpoena for documents on the Maryland Office of the Attorney General ("OAG"). In the parties' joint status report filed on June 26, 2020—nearly 13 months ago—counsel for the parties and counsel for OAG (who also represents Defendant Arnold) agreed that "[t]he materials that the subpoena seeks are critical to the case and to Mr. Annappareddy's ability to effectively request and obtain discovery from other sources." (ECF No. 162 at 2.) On March 8, 2021—four and a half months ago—the Court entered an Order providing that OAG "will have until July 31, 2021 to fully respond to the document requests contained in [the] subpoena." (ECF No. 170.)

Consistent with applicable Federal discovery rules, the instructions accompanying the subpoena requested that electronically created documents be produced **both** as "static TIFF images" and, where available, as "**native files**"[1] accompanied by "**all available metadata fields**," as well as a "**load file**" in standard .DAT format.[2] As explained below, OAG has refused to produce the requested native files and metadata—thereby materially impeding the ability of Mr. Annappareddy's counsel to review the electronically created documents that it has produced. Mr. Annappareddy respectfully requests that the Court schedule a status conference at its earliest convenience to discuss this issue with the parties.

---

[1] **"Native" files** (*e.g.*, .DOC files created by Microsoft Word, or .JPG image files) are those that contain the "associated file structure defined by the original creating application." Although documents "may be converted" a "[s]tatic format (often called imaged format), such as TIFF or PDF," such conversion "does not allow metadata to be viewed or the document information to be manipulated unless agreed-upon metadata and extracted text are preserved." SEDONA CONFERENCE GLOSSARY 2020: Definition of Native Format, *available at* https://thesedonaconference.org/publication/The_Sedona_Conference_Glossary

[2] "**Load file**" means: "A file that relates to a set of scanned images or electronically processed files, and that indicates where individual pages or files belong together as documents, to include attachments, and where each document begins and ends. A load file may also contain data relevant to the individual documents, such as selected metadata, coded data, and extracted text. Load files should be obtained and provided in prearranged or standardized formats to ensure transfer of accurate and usable images and data."

**Background on Requested Information**

Mr. Annappareddy's ability to prove his case here depends in large part on his ability to prove **who** knew **what**, and **when** they knew it. To accomplish this, it is critical that he be able to review not only the content of individual relevant documents in isolation, but also the relationships between those documents and the legally relevant timeline. For example, Mr. Annappareddy must be able to identify **which documents were attached to which emails on which dates**—a basic step in reviewing electronic documents, and a step which OAG's refusal to comply with standard instructions is making unreasonably difficult, costly, and inefficient.

With respect to electronically created documents (including emails, word processing files, and spreadsheets), the information needed is readily available in the metadata associated with each computer file.[3] This metadata includes:

(1) **Date-Related Metadata.** This includes the date on which the file itself was created, the date when the file was last modified, and, with respect to email files, the dates and times on which the email and its attachments were transmitted and received.

(2) **Email Relationship Metadata**. This includes data that enables the "linking" of emails with their attachment files, as well as the "threading" of emails into "chains" based on information about whether a given email was, for example, sent as a reply to another email or forwarded from one recipient to another.

(3) **Source-Related Metadata**. This includes information about the "author" of a given file, and sometimes information about other individuals or computer systems that have interacted with the file.

(4) **File Path Metadata**. This provides information on where files were kept in relation to each other, which would allow Mr. Annappareddy to see how information was organized originally, *i.e.*, information about how the files were "kept in the usual course of business," or how they were "ordinarily maintained." Fed. R. Civ. P. 34(b)(2)(E)(i)–(ii).

**Load Files.** In order to associate the relevant metadata with correct document, the files must be accompanied by a Load File in a standardized format: usually .DAT format.

**OAG's First Production**

On March 8, 2021, the Court entered its Order setting a July 31, 2021 deadline for OAG "to fully respond to the document requests contained in Plaintiff's subpoena" and to produce documents "on a rolling basis." (ECF No. 170.) On May 13, 2021, the Court held a status conference during which Mr. Annappareddy's counsel informed the Court that the OAG had yet to produce a single document in response to the subpoena. The Court responded by directing the OAG to begin producing documents immediately, notwithstanding any technical issues the OAG's IT department claimed to have in producing the documents. That same day, OAG provided Mr. Annappareddy with its First Production.

---

[3] **"Metadata"** means the "structural information of a file that contains *data about the file,* as opposed to describing the content of a file." *Id.*, Definition of Metadata (emphasis added).

The First Production consisted of 921 documents with a total of approximately 6,500 pages. Apart from approximately 50 files consisting of spreadsheets and audio files,[4] the remainder of the documents were produced *only* as black-and-white static TIFF image files. Some of the TIFF files produced appeared to have been generated through a physical scanning process, suggesting that they were originally in paper format ("Paper Originals"). Others appeared to be native-format electronic files that had been rendered into static TIFF image files, which means they were originally native-format files that were "convert[ed] . . . to an image that appears as if the original format file were printed to paper"[5] ("Digital Originals").

Critically, (1) no Load File was produced with the documents; (2) all documents produced were contained within a single folder with no intact subfolder structure included, (3) the documents were not in any immediately discernible order, and (4) neither the Paper Originals nor the Digital Originals were accompanied by any original metadata in the four categories described above.[6]

**Attempts by Mr. Annappareddy's Counsel to Confer About Form of Production**

Since the First Production, Mr. Annappareddy's counsel have had extensive discussions with OAG staff regarding the form of production in an attempt to determine the reason for the lack of relevant metadata and file structure in OAG's productions. Those discussions confirmed that OAG possesses much of the relevant metadata, but has unilaterally decided not to upload those metadata to OAG's internal document review software prior to producing the documents.

Although OAG staff has confirmed that the information ***can be imported*** into the software and produced to Mr. Annappareddy, OAG's counsel has decided to continue to produce image-only files – without relevant metadata or native files. OAG has made two additional document productions in this effectively unusable format (on July 15th and July 16th).

OAG claims that its refusal to produce documents in reasonably usable formats is a result of the need to comply with the July 31, 2021 deadline set by the Court. But failure to produce documents in usable formats is not "fully respond[ing]" to the subpoena's requests—especially where OAG has not disputed that it has the technical ability and staff to produce the documents in the requested formats.

Sincerely,

Joshua D. Greenberg

---

[4] These were produced as Excel files with .XLS-type extensions or as audio files in Windows Media Audio (.WMA) format.

[5] Sedona Conference Glossary 2020: Render Images (emphasis added).

[6] OAG's production was equivalent to printing out a physical copy of each relevant document (including emails, Word files, and digital image files), dumping the papers on a football field, and allowing Mr. Annappareddy access to the field to sift through thousands of pages by hand.